Raymond E. Aldrich, Jr., J.
“ James Victor Harris ”, as petitioner, brought this proceeding against “Josephine Nancy Harris ”, his former wife, in the Supreme Court, pursuant to section 240 of the Domestic Relations Law, by order to show cause and petition, for custody of their three infant children if the wife persisted in her plans to remove them from Dutchess County to the State of Illinois, and for an order continuing the visitation of petitioner with his children in Dutchess County. In response, the wife opposed the application, and requested that the court deny the petition. Upon the return date, determination of the matter was referred to this court pursuant to section 651 of the Family Court Act (Family Court Docket No. R-810-68).
The hearings consumed two days, both parties were ably represented by counsel, both testified, the court interviewed the children, the petitioner presented one witness, and the parents and children were examined by a psychiatrist and psychologist.
*673 The parties were married on April 17, 1954, and their three children, “Alice”, “Karen” and “ Paul ” were born on June 20, 1955, January 17, 1957 and July 15, 1959 respectively. Marital difficulties occurred, causing the parties to be separated, evidenced by a separation agreement dated July 6,1967. Paragraph 1 of the agreement stated: “ each may reside at such place, or places, as be or she shall Select. Bach may, for bis or her separate use, profit or benefit, conduct, carry on, and engage in any business or profession, or employment, which to him or her may seem desirable, or advisable, without any authority, control or direction from the other party.” Paragraph 3 granted custody to the mother, subject to prescribed visitation rights of one weekend per month, three weeks each year, alternate Christmas days, and reasonable visitation rights after reasonable notice. Among the other provisions, the husband was to pay to the wife for support and maintenance of the children the sum of $21.66 per week per child until 18 years of age in the case of the boy and 21 years in the case of the girls, in addition to paying $25 a week to the wife as alimony until her death or remarriage.
Thereafter, on July 18, 1967 petitioner went to Mexico, and, upon respondent’s appearing in the proceeding by an attorney, a decree of divorce was granted, which included a ratification and incorporation of their aforesaid separation agreement. Throughout the negotiations leading up to and including the separation agreement and subsequent divorce, the parties were represented by separate attorneys.
Some time during the early part of 1968, the exact date being in dispute, respondent averring the time was in February, she informed her husband that she had been accepted at Northwestern University for her doctorate in the school of speech, and that if she received a fellowship, she intended to move to Evanston, Illinois with the children. The wife was granted a $5,000 fellowship, and she has entered into a written contract for the sale of her home in Dutchess County with the title closing to be on or before September 1, 1968. Furthermore, she has rented an apartment in Evanston.
Petitioner pleads to permit her to take the children with her would deprive him of his visitation rights, their rights of visitation with him, and be contrary to their welfare and best interests by subjecting them to strange, unfamiliar surroundings and associations.
Family Court in this instance seeks as sole consideration, what are the best interests of these children, and what will best promote their welfare and happiness (Domestic Relations Law, *674 § 240). This principle has always been the guidance of courts (Finlay v. Finlay, 240 N. Y. 429; Matter of Rich v. Kaminsky, 254 App. Div. 6). In the solution of the problem of custody, the interests of the children must be the paramount consideration (Lester v. Lester, 178 App. Div. 205, affd. 222 N. Y. 546; Shakun v. Shakun, 11 A D 2d 724).
The Mexican divorce decree obtained by the parties will not necessarily be controlling on this court, for my duty is to determine custody solely on the basis of the welfare of the minors. (Matter of Bachman v. Mejias, 1 N Y 2d 575.) Furthermore, neither is the separation agreement determinative of the disposition to be made of custody. This court is charged with the duty to do what is necessarily in the best interests of the children, mindful of their welfare and health, and without being restricted by an agreement made by adults and to which the children were not parties. (Matter of Hicks v. Bridges, 2 A D 2d 335; People ex rel. Rowe v. Rowe, 11 A D 2d 759.)
There is no absolute rule to aid the court in determining which of these parents, now opposing each other, is more entitled to the custody of the children. Truly, neither party has a prima facie right to the custody of the children and such is even confirmed by the statute. (Domestic Relations Law, § 240.)
The evidence indicates that the husband knew in 1963 or 1964 that his wife wanted to secure her doctorate degree. He testified he knew it in “ my heart even before then ”. He admitted such a degree would be security for her, she could then arrange for patients at her home, and secure a better employment position on more favorable terms. He stated to the court that he believed his wife was truthful and honest, and that her purpose in going to Evanston was solely to obtain her doctorate degree at Northwestern, and further he thought it was a good thing for her to do until he learned the children were opposed to moving.
The respondent has a bachelor’s and master’s degree, and has been employed all her married life, except for interruptions for pregnancies, in. the speech therapy field, and even before her marriage she was so involved. She is an assistant professor at State University College, New Paltz, and now seeks her doctorate degree, her major to be in language pathology. The only university in the country where she can secure such a degree is Northwestern, although Stanford is expected to initiate such a course this fall.
There is no question from the evidence that the wife’s purpose in leaving for Northwestern is other than sincere and her sole objective a legitimate one to further her academic prominence. If she secures a doctorate, she will be immediately elevated to *675 an associate professorship and thereupon command a salary of $4,000 to $5,000 a year more, and she most surely in the future would be elevated to a full professorship with even greater income and more favorable working conditions. Furthermore, she would be assured of tenure by her advanced degree. Such a situation most certainly would adhere to the benefit of the children and be to their best interest and welfare. The security the mother would have and the ability to demand more favorable employment conditions would permit her to be with the children more than at the present time and assure to them a greater opportunity to have the love, affection and attention of their mother.
The objection of the children to moving from their present surroundings is well understood by the court, and is a natural reaction of children who have not experienced any mobility of modern life. They are of tender years and uncertain by virtue o.f their immaturity, and their concern about moving, while childish, is appreciated. However, this court believes from observing them and analyzing the testimony and reports of the psychiatrist and psychologist that they will adapt to new surroundings, make new friends, and finally benefit from the academic advancement of their mother. Their immaturity prevents them from fully anticipating at this time the new experiences ahead of them. Surely the culture and mores of Evanston can scarcely be regarded as inferior to our own, or so substantially different as to be determinative of the issues here.
The child “ Alice ” has been enrolled at five different schools so far, so a further change and meeting of new schoolmates should be a procedure to which she can adjust, as she has in the past, without a traumatic shock, and “Karen” should she remain here, would be going into junior high school, which is a far different type of school from where she matriculated last year.
The psychologist’s report indicates that both parents are of very superior intelligence and that the children are either superior or above; that the older daughter is inclined to manipulate the other children and adjust their thoughts and reactions to her own determined course, and two of the children admitted ganging up against the mother when she decided to further her education.
These children should not be permitted by this court to decide whether their mother should secure her doctorate, nor will this court allow them to remain here while she goes to Evanston. These children need the firm, loving hand and guidance of a mother, not a housekeeper as the husband would need if he *676 obtained custody, and they need her attention and surveillance on a daily basis. The older girl is of particular concern to the court, for she is just 13 years old, is going steady with a 12-year-old boy, and from the observation of this court, needs the discipline and guidance only her mother can afford her. The husband characteristically indicated his philosophy when he stated that the decision in this proceeding should not be made by the children, or by himself, or by his wife. He felt it would be beneficial to the children to have this hearing, where they can air their feelings. He concluded by stating that this proceeding puts the burden on the court and relieves him of making the decision. The psychologist’s report indicates that one of the complaints of the wife, which was one of the main causes of the marital disputes, was that the husband expected her to make all the decisions, socially, financially and otherwise.
The apartment where the wife and children will live rents for $365 a month, has six rooms, three bedrooms, two baths, is on the second floor in a brand new apartment house secured by a doorman, is three blocks from a playground, and is seven blocks from Lake Michigan with its four miles of beaches. The objection made by the children that they cannot take their two ponies with them has little influence on the court’s decision, for the father will keep the ponies and the children can ride them during the summer vacation when they will be spending three weeks with him.
The evidence indicates, and this court finds, that the respondent is a fit and proper person to have custody of these children. This finding is made despite the testimony of the petitioner relating to an incident when the respondent superficially cut her wrist in April, 1967. Such episode was the culmination of severe emotional strain generated by the discord and altercations between them. Certainly the incident did not dissuade the petitioner from giving her custody of his children by .the separation agreement, and then affirming the same in his divorce decree, and then permitting them to be under her control for over a year thereafter. In arriving at the above finding of the inconsequential nature of this act, the court is mindful of the psychiatrist’s testimony and further of the statement of the petitioner in paragraph 16 of his affidavit that he was asleep at the time, which is a complete contradiction of the assertion of the witness on the stand that he was not asleep. Such diametrically opposed statements under oath severely shake petitioner’s credibility.
Respondent has sought to encourage a closer relationship between the father and her children ever since the divorce. The *677 husband’s witness was employed in the mother’s home from February to August, 1968, and she testified she knew of no time when the wife tried to alienate the children from their father. The wife became concerned about the failure of the father to spend as much time with the children as she thought best, and about their desire to be with him, so in November or December of 1967 she called him, stating the children wanted to see him more often and she tried to encourage his weekend visitations. Significantly, the father exercised his weekend visitations overnight only on Labor Day weekend in September, 1967, and then not until Washington’s Birthday in February, 1968, a span of 5months. Peculiarly enough, he has been considerably more attentive to his visitations since learning of respondent’s proposed move, taking the children every other weekend in the past few months, rather than once a month, with the wife’s full agreement and approval.
Neither the psychiatrist nor the psychologist advanced any persuasive argument which would preclude this court from approving the removal of the children. While it was thought the move might impose a hardship originally, neither stated in their opinion that such would be a traumatic experience to be avoided.
This court believes these children should not be separated from the love, affection and attention of their mother. She is the one better able to. cope with the problems of two teen-age girls, and for this reason, in the advancement of their welfare and best interests, this court will not disturb the custody arrangements heretofore agreed upon by the parties, for to do so would be detrimental and deleterious to the welfare of these youngsters.
The evidence indicates to the full satisfaction of this court that the mother’s reasons for going to Northwestern are bona fide and most exceptional. This is not the case of a vengeful woman seeking retribution from her husband, or of a woman whose move is occasioned by pique, so as to prevent the father’s visitation. This is as normal and reasonable a move as would the father’s be if he were transferred by his employer to one of their many plants.
This court does not believe that the health and welfare of these children will be adversely affected by their removal to Evanston. While the husband will be prevented from exercising his regular visitation rights, he will have them for an extended period during the summer, and their removal will be a temporary one, since the mother will return to New Paltz within three years. The best interests of these children will be enhanced if *678 their mother secures her doctorate, for the reasons the court has heretofore stated, not the least of which is financial, giving her the necessary security of more income and tenure. In this connection we must remember that the father is applying less than one fifth of his income to the support of his three children, and it is essential that the mother be permitted to advance herself so that any monetary gain will accrue to them. Because of her age it would be impossible for her to obtain a grant at a future date, a grant which she would require to finance their living while she obtains her degree.
Considering the guiding principle to be the sole and best interests and welfare of the children, and their need for the love, affection and companionship of their mother, particularly considering their ages, all of which is the predominant criterion to which all other considerations must defer, and that the move of residence will be a temporary one, for a good purpose, to advance herself and be more able to provide for the financial needs and security of the children, permitting her to participate more fully in their daily affairs and activities, the court comes to the conclusion that petitioner has failed to establish satisfactorily that respondent should be prevented from going to Northwestern with her children.
For the foregoing reasons, the reliefs sought by the petitioner are denied and the petition is dismissed. Ordered accordingly.