The People of the State of New York ex rel. Rhodia Wasserberger, on Behalf of Mark Wasserberger and Simon Wasserberger, Respondent, v. Edward Wasserberger, Appellant.

First Department, June 28, 1973.

*Bernard S. Meyer* of counsel (*Samuel G. Fredman* with him on the brief; *Fink, Weinberger, Levin & Charney,* attorneys), for appellant.

*Leonard C. Shalleck* of counsel (*Irving I. Erdheim* and *Milton P. Falk* with him on the brief; *Erdheim, Shalleck & Falk,* attorneys), for respondent.

Stevens, P. J. In this habeas corpus proceeding petitioner sought custody of two infant children of the marriage between the parties. The writ was sustained, custody was awarded petitioner and respondent was directed to pay the sum of $300 each week as and for the support of the two boys, ages five and one-half and three years.

The parties were married April 24, 1966. They separated July 20, 1972, at which time a separation agreement giving custody to respondent husband was executed by the parties, each then being represented by counsel. Negotiations with respect to the

agreement commenced sometime in November, 1971, and continued until finalized July 20, 1972.

This proceeding was commenced on or about October 2, 1972. Earlier, in March, 1972, petitioner had commenced an action for divorce in which petitioner sought alimony, custody and child support. The stated ground was cruel and inhuman treatment. Subsequently, in October, 1972, petitioner served a notice of discontinuance, which notice was rejected by counsel for respondent as untimely.

In any proceeding involving custody the court must give such direction " for the custody, care, education and maintenance of any child of the parties, as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties and to the best interests of the child. In all cases there shall be no prima facie right to the custody of the child in either parent." (Domestic Relations Law, § 240; see, also, § 70). The court is required to " determine solely what is for the best interest of the child, and what will best promote its welfare and happiness, and make award accordingly." (Domestic Relations Law, § 70). The statutes state clearly that there is no prima facie right to custody in either parent.

The parties here executed an agreement for joint custody of the children, thus providing, save for physical location, that the children could share and have the benefit of the love, counsel and attention of both parents. The agreement was freely entered into. In fact, coercion is expressly disavowed by petitioner. The record reveals changes suggested by petitioner which were accepted and incorporated in the document, and that petitioner, despite an initial disavowal, came to the final conference prepared to discuss and negotiate the terms of the agreement and understood fully its contents and implications. Of course, no agreement as to custody can bind the court so as to render inoperable its supervisory power. When the court recognizes or gives attention to an agreement, it does so, " not because the parties' compact binds the court, but for the light it sheds on the motives and disposition of the parties ". (*Agur* v. *Agur*, 32 A D 2d 16, 19–20.) The court looks at the total picture and attempts to consider and weigh all factors in determining what is for the best interests of the child.

There is little doubt that the infants have the love and affection of both parents. While the parties were living together there was a governess for the children, and respondent continues that procedure. The record reveals some testimony by respondent that petitioner believes children should be reared by govern-

esses, that it is not the responsibility of a mother to do full time work with children, and that she felt life was passing her by because she had to spend all her time with the children. Petitioner testified that she felt a nanny (governess) should help with the chores of motherhood, but the mother is to supervise the nanny at all times. Petitioner before and during her marriage expressed a not unusual desire to work at least part time despite the ability of respondent to support his family in comfort.

Of more concern is the fact that about one week and a half after employment of a governess in 1970, petitioner took a trip to Kenya to visit her parents and was gone for a period of six weeks. Within the year petitioner took another trip of three or four weeks' duration to London, Germany and Kenya. During this time respondent and the governess cared for the infants, one of whom was of a very tender age. While petitioner was away on the first trip, the governess became ill, and because she was absent for a week, it was necessary for respondent to obtain a replacement for that period. The governess had complete charge of the children. She took care of their clothing, their rooms, meals, exercise and recreation. The older boy would eat breakfast with his father and usually greet him at the door upon his return from work.

Petitioner supervised the children's education, purchased their food, upon occasion instructed what petitioner desired for their dinner and, once in a while, played with them in the presence of the governess.

The children were born in the United States; this is their home. The respondent is a successful businessman, devoted to the children. The apartment in which they reside appears from the pictures and the description to be spacious, comfortable and well-furnished. By the terms of the agreement petitioner had almost unlimited visitation rights which petitioner exercised without hindrance.

Petitioner, age 30, is somewhat younger than respondent. The extramarital relationship revealed by the record cannot be disregarded entirely in considering whether there will be a stable home life for the infants. It has been held that a single act of adultery is not a sufficient basis upon which to deny custody to a mother (*Sheil* v. *Sheil*, 29 A D 2d 950), though the past conduct of a party or an affair of extended duration warrants closer scrutiny and greater consideration. (*Harrington* v. *Harrington*, 290 N. Y. 126; see *Johnson* v. *Johnson*, 47 Misc 2d 805, affd. 25 A D 2d 672.) Disregarding all else, such an affair could affect the availability of a parent when such parent's presence is

vitally necessary. The contemplated trip referred to in the record, abandoned apparently, upon discovery, is a factor for concern. The infants' welfare was not then paramount. Also, the circumstances of the act or acts involved could raise a question of the importance of priorities.

Petitioner, having consented to custody in respondent, has shown nothing to warrant a change. Certainly, there is nothing in the record which even indicates they are not being well cared for, loved, protected and in the process of starting, for the older boy, the educational process. Respondent is shown to be in every way a fit custodian and father. Indeed petitioner does not really charge the contrary.

For all the reasons heretofore stated, the judgment entered April 9, 1973, in New York County (ROSENBERG, J.) which sustained a writ of habeas corpus, should be reversed on the law, the facts and in the exercise of discretion, and the petition should be dismissed without costs.

TILZER, J. (dissenting). Issues of child custody, particularly in disputes between parents, present what is perhaps the most difficult of problems for judicial resolution. A determination of what is in the best interests of the child (Domestic Relations Law, §§ 70, 240) is based for the most part upon "the wise exercise of discretion." (*Harrington* v. *Harrington*, 290 N. Y. 126, 131.) In this respect, an appellate court's function is highly limited, for more than in any other type of proceeding, the trial court's ability to observe the parties and to evaluate the testimony in light of its observations, should be accorded great significance. We are dealing here with matters of human relationships, and such are far too difficult to glean from a cold record. Therefore, unless it can be said that the trier of the facts abused its discretion, or made findings unsupported by the evidence, its determination as to what would best serve the interests of the children should not be set aside. I believe that the trial court's award of custody herein to the mother constitutes a proper exercise of discretion and is amply supported by the evidence and accordingly, I must dissent.

The facts are as follows: Petitioner, 30 years of age, and respondent, 51 years of age, were married in 1966. There are two infant sons of the marriage who are now 5½ and 3 years old respectively. In September or October 1972, the petitioner asked respondent for a divorce. Although the parties continued to reside in the same apartment, the marriage was for all intents and purposes a "dead one". The parties engaged counsel and many months of negotiations followed, in an attempt to arrive

at the terms of a separation agreement. From almost the very beginning, it was well understood that custody of the children would be given to the petitioner, and the main subject of the negotiations concerned the financial arrangements. Nevertheless, long after the negotiations were under way, and after the summons in the divorce action was served, respondent engaged detectives who thereupon secured evidence establishing that petitioner was involved in an adulterous relationship. Accordingly, respondent renewed his demands for custody and on July 20, 1972, a separation agreement was signed providing for " joint custody ", with the children to reside with the father. This habeas corpus proceeding was initiated but two months after the agreement was executed.

Although the majority of this court acknowledges that " there is little doubt that the infants have the love and affection of both parents " and has made no finding that petitioner is unfit, or has abandoned or neglected the children, it nevertheless has concluded that custody should remain with the respondent — petitioner not having shown anything to warrant a change. In reaching its conclusion, the majority has relied upon the following: (1) the separation agreement; (2) the petitioner's involvement in an extramarital affair; (3) two trips taken by petitioner to visit her parents in Kenya; and (4) testimony concerning petitioner's belief that " children should be reared by governesses." The above, whether considered separately or as a whole, do not however, demonstrate the mother's inability to raise the children, or that the children's best interests would not be served by granting custody to her.

First, considering the effect to be given the separation agreement, it is my belief that the circumstances under which it was executed indicate that it is of no value in determining what would best serve the interests of the two infant children. There is a conflict in the testimony as to the exact reason why petitioner agreed to respondent's new demands for custody. Petitioner testified that her former attorney, who had received a $10,000 fee after execution of the agreement, advised her that she had no choice but to capitulate since she could no longer win a custody fight. The attorney, on the other hand, testified that he advised petitioner that while she would not be granted alimony, she could still obtain custody and would be awarded child support. It does not appear that petitioner was advised that such support could include an amount sufficient to include the cost of a governess — such being consistent with the parties' prior standards and practice in raising the children. Of significance, moreover,

is the fact that it was admitted by the attorney that he did advise petitioner that in about a year or two, she could bring a new custody proceeding. Regardless, however, of whose testimony is accepted, it is obvious that the agreement was arrived at in a state of panic and urgency and was contrary to the understanding which had existed for many months. Not only is the agreement not binding upon the court (*People ex rel. Rowe* v. *Rowe,* 11 A D 2d 759; *Harris* v. *Harris,* 57 Misc 2d 672) but it sheds no light whatsoever " on the motives and disposition of the parties." (*Agur* v. *Agur,* 32 A D 2d 16, 19–20.) " The issue of the child's welfare cannot be determined on the basis of the outcome of the prior maneuvers of the parents. (*People ex rel. Cachelin* v. *Cachelin,* 18 A D 2d 1057, 1058.)" (*Araujo* v. *Araujo,* 38 A D 2d 537, 538.) The trial court's conclusion that the agreement by the mother did not constitute desertion, nor indicate unmotherly spirit, is amply supported by the evidence. (See *People ex rel. Sprecels* v. *DeRuyter,* 150 Misc. 323, 325; 2 Foster-Freed, Law and the Family, § 29:21.) Accordingly, since the agreement did not constitute an abandonment of the children and since the proceeding was brought so soon after execution of the agreement, it was not incumbent upon petitioner to show a change in circumstances in order that custody be awarded to her.

We now consider petitioner's involvement in the extramarital affair. The law is that " the fact that the mother has been guilty of adultery, or a series of adulterous acts with the same man, does not bar the court from awarding custody of the children to her " (15 N. Y. Jur. Rev., Domestic Relations, § 355; 2 Foster-Freed, Law and the Family, § 29:8). Only where the behavior of the mother has been such that it demonstrates extraordinary standards of conduct or where the adulterous relationship has been carried on in a manner inimical to the interests of the children, should the adultery deprive the mother of custody. (Cf. *Bunim* v. *Bunim,* 298 N. Y. 391.) There is no proof in this record that the mother's private life had any adverse effect on the children. This issue was considered at length by the trial court, which stated as follows: " The petitioner's extramarital acts were not committed in the presence or knowledge of the children and did not affect them in any way. Her conduct outside the marital home, although not condoned, does not in and of itself make her an unfit custodian. The question of petitioner's fitness was merely raised by way of her indiscretions. The respondent did not show that the petitioner had no concern, affection and

love for her children, and that she did not protect them and take care of their needs.''

The majority refers to the two trips taken by petitioner to Kenya to visit her parents and further makes reference to the petitioner's reliance on '' governesses '' in raising the children. The first trip to Kenya was made in 1970 and the children were left in the care of a governess and of the father. The second trip was taken in 1971, while respondent was also abroad in Europe, and again the children were left in the care of a governess. I do not believe that neglect is established where children are left in the custody of a competent governess or with the children's father. And in reference to the petitioner's use of a governess in raising the children, the record does not establish that petitioner relinquished parental authority and obligations to the governess. Indeed, the evidence conclusively established the opposite. The testimony of the petitioner, the testimony of the governess (called as respondent's witness), and in part the testimony of the respondent himself, established that petitioner supervised the governess and gave constant devoted attention to the children. Certainly, it is not uncommon for people in the income bracket of these parties to engage a governess, and the record shows that both petitioner and the respondent had governesses in their childhood.

Accordingly, none of the facts relied upon by the majority of this court indicates that the mother is not a fit custodian of the children or that the trial court improperly concluded that the best interests of the children would be served by awarding custody to petitioner. These children are of tender years and generally, custody of such children is granted a mother who has been demonstrated to be a fit custodian (15 N. Y. Jur. Rev., Domestic Relations, § 354). While there is no prima facie right to custody in either parent, the age of the children is a relevant consideration and gives recognition to the fact that certain needs of young children are best supplied by a mother's care. In contrast to the supervision petitioner has always accorded the children, and her demonstrated ability to continue to provide such attention in the future, respondent, undoubtedly a loving and fit parent, is a successful executive who is subject to unusual demands on his time. Indeed, the record shows that respondent has frequently been called upon to make business trips out of the country. It is obvious that he is not in the same position as petitioner to devote the time and attention to the children which they require. Under all the circumstances, I believe that custody

of the children was properly awarded petitioner and the judgment should be affirmed.

MARKEWICH and LANE, JJ., concur with STEVENS, P. J.; NUNEZ and TILZER, JJ., dissent in an opinion by TILZER, J.

Judgment, Supreme Court, New York County, entered on April 9, 1973, reversed, on the law, the facts and in the exercise of discretion, without costs and without disbursements, and the petition dismissed.