OPINION OF THE COURT
Karen S. Burstein, J.
Petitioner seeks to modify the visitation he has with his two *731 daughters to increase the time provided in a judgment of divorce entered on June 27, 1985. That decree incorporated by reference but did not merge a separation agreement executed May 29, 1985. Paragraph 8 of that agreement permits petitioner, upon prior notice, to see his children for four hours every other Sunday. Petitioner argues that circumstances, including the age of the girls, have changed sufficiently to warrant a change in the arrangement and that the best interests of the children will be served by allowing them more interaction with their father.
Respondent moves to dismiss petitioner’s application on the grounds that the court lacks effective authority to proceed and that, in the alternative, it must decline to act since the petition fails to establish a basis for relief.
Respondent’s first contention rests on the undisputed fact that the Family Court is a court of limited jurisdiction and has no power to rescind or reform a contract. Respondent concludes, therefore, that the exercise of Family Court’s statutory authority to modify the divorce decree here would ultimately be unavailing since its decision could be collaterally attacked in a Supreme Court action for specific performance of the surviving separation agreement. Respondent concedes that case law, court rule and legislation have circumscribed the sanctity of separation agreements, as exemplified by Family Court Act § 461 (a), which allows the Family Court to act in derogation of an agreement that seeks to eliminate or diminish a parent’s obligation to support his or her children.
Respondent also acknowledges that the Second Department, in which this Family Court is situated, has long required a retention of jurisdiction provision in all divorce decrees permitting court modification of custody and visitation awards in light of the circumstances obtaining at the time application for modification is made. Finally, respondent points out that this provision is now required of every trial court State-wide under Uniform Rules for Trial Courts (22 NYCRR) § 202.50 which directs that the following language, contained in chapter III, subchapter B of subtitle D of that title, appear in every decree: "and the court retains jurisdiction of the matter concurrently with the Family Court for the purpose of specifically enforcing such of the provisions of that (separation agreement) * * * as are capable of specific enforcement, to the extent permitted by law, and of making such further judgment with respect to maintenance, support, custody or visitation as it finds appropriate under the circumstances existing *732 at the time application for that purpose is made to it, or both”.
Oddly, the respondent adduces all the above examples as bolstering her insistence that the Family Court may not here intervene. Put briefly, respondent asserts that because the statute only explicitly addresses support overrides, it does not comprehend custody and visitation; further, that this agreement was made in the First Department and is therefore not governed by the Second Department’s jurisdiction retention language; and ultimately, that this language, as now extended to all trial courts, only gives Family Court jurisdiction to enforce agreement language and not to alter it.*
Respondent is incorrect on all these points. First, there is no need to make a specific reference in the Family Court Act to the alterability of contracts touching custody and visitation, since, as the Court of Appeals said in Friederwitzer v Friederwitzer (55 NY2d 89, 93): "The only absolute in the law governing custody [and visitation] of children is that there are no absolutes.” In both original and modification actions, the court is enjoined by the Legislature in the governing statute (Domestic Relations Law § 240), to consider the circumstances of the matter, of the parties and the best interests of the child. "No agreement of the parties can bind the court to a disposition other than that which a weighing of all of the factors involved shows to be in the child’s best interest” (Friederwitzer v Friederwitzer, supra, at 95, citing People ex rel. Wasserberger v Wasserberger, 42 AD2d 93, 95, affd on opn below 34 NY2d 660; see also, Matter of Ferio v Ferio, 84 AD2d 955). The Second Department’s rule merely codified expectations; the rule’s expansion to all trial courts is more ministerial than substantive, since even before, those courts were governed by the underlying principle that parties may not contract away the best interests of their children. This principle, as enunciated in Matter of Guillermo v Guillermo (43 Mise 2d 763), a support case, is even more telling where custody and visitation are concerned. For, unlike dollars, the hours of children’s lives are not fungible; there is never a way to pay back for lost opportunity, for missed experience, for absence. To suggest, as respondent has, that the Family Court may not *733 entertain petitioner’s application is to consent to the noxious proposition that children’s existence can be unchallengeably constrained, so long as they are children, by the bad bargains made for them by adults.
Respondent argues that petitioner does have a remedy here, but in fact it is a nugatory one. He may, according to respondent, bring a plenary action in Supreme Court to rescind or reform the agreement. Even assuming that time for such action has not run (equity has a statute of six years) and that a ground for such relief exists (change of circumstances won’t do), the time it will take for resolution has real consequences for those individuals who are peripheral to the contract action but essential to the human equation — the children. In a custody or visitation action, in Family or Supreme Court, they need not be voiceless; in the domain of the law of contract, they are merely property. Such a result is revolting from a moral perspective and stupid from a prudential one. Children don’t belong to their parents; they belong to themselves, but they exist in the world; their development, action, and consciousness have enormous consequences for the community. That is why their fate cannot be left exclusively to those whose genes they bear and why questions concerning their involvement with parents need to depend for resolution, not on the good will and maturity of their fathers and mothers, but on a neutral forum where parental and child concerns can be weighed against the standard of best interest evolved over years of case law and life experience. That part of respondent’s motion to dismiss, predicated on lack of Family Court jurisdiction, is therefore denied.
Respondent’s alternative argument that, even if jurisdiction obtains to consider petitioner’s application, such application does not state a basis for relief is similarly unavailing. Disingenuously, respondent claims that the only change in circumstance warranting a revisiting of the divorce-established visitation agreement is that the children have grown older. This requires the court to overlook the anomalous original agreement (the father can see children only eight hours a month) and the court’s own long experience with this case when, on the record and off, allegations have been made about the father’s problematic mental capacity at the time the marriage ended. Judges live, as do litigants, in the real world and their decisions about what is justiciable depend necessarily on their understanding of the ways particular circumstances intersect with statute and precedent. Here, it seems clear that the *734 petitioner should have an opportunity to show that what he agreed to seven years ago no longer benefits his children and that their best interests will be served by an expansion in the hours he can spend with them, because he is different and they, by virtue of the passage of time, are also more capable of enjoying and growing from being in his presence.
In addition to requesting a hearing on the wisdom of a change in visitation arrangement, petitioner requests that a Law Guardian be appointed for the children, that all parties be directed to submit to mental health examinations and that an in-home inspection of the visitation site occur. The court reserves decision on these latter motions, pending an in camera interview with the children and the establishment of a hearing schedule.

 The idea that the language of subchapter B means that the Family Court can only specifically enforce contract language, not act, in the best interests of the child, to modify those elements which affect the child’s life, requires a reading that contravenes the rules of grammar, the history and purpose of the Family Court, and common sense.