Matter of M.W. v A.T. (2005 NY Slip Op 51382(U))

[*1]

Matter of M.W. v A.T.

2005 NY Slip Op 51382(U) [9 Misc 3d 1103(A)]

Decided on June 27, 2005

Family Court, Suffolk County

Lynaugh, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 27, 2005

Family Court, Suffolk County
Matter of M.W., Petitioner, A.T., Respondent.
V-1987XXXX

Barbara Lynaugh, J.
By petition filed 12/5/03, petitioner M.W. seeks custody of her godson T., born 6/4/94, to whom she is not related, as against respondent-mother A.T. Although the putative father appeared briefly in this matter and has an ongoing relationship with the child, he declined to acknowledge paternity; paternity of the child has never been established.
Mother, who is indigent and resides in South Carolina, appeared sporadically during these proceedings. She was assigned counsel, who appeared on her behalf throughout the proceedings. Mother was present for the first day of trial but failed to return, after several adjournments, for the conclusion of trial. The court proceeded in her absence; mother's counsel was present and participated fully. A psychological evaluation and home study of mother was completed in South Carolina and admitted into evidence (Petitioner's 2.)
Having heard the evidence offered at the hearing, having conducted a lengthy in camera interview with the child, and having reviewed the recommendations of the Law Guardian, and with thorough and careful consideration, the court makes the following findings and conclusions.
Mother, then age 21, placed T. in the custody of Ms. W. on 9/24/99 pursuant to a document mother executed at that time (Petitioner's 1.) The child has resided with Ms. W. since that date. Although the document refers to "tempary (sic) custody," mother has never taken any action to secure the return of her child. She has not filed a cross petition in this proceeding.
Mother voluntarily relinquished custody of then 5-year-old T. in September 1999 because she was having difficulty caring for her newborn twins, born prematurely at 25 weeks with substantial medical problems.
From September 1999 to September 2001, mother remained in New York, living in Mount Vernon. Mother visited T. two to three times per month, usually when Ms. W. drove the child to Mount Vernon. In September 2001, for reasons that have not been explained, mother moved with the twins to South Carolina, leaving T. in New York with Ms. W.
Following her move south, the extent of mother's contact with T. was shameful. Mother reported to the forensic evaluator that she "lost everyone's phone number in the move." In October 2003, two years following her move, mother telephoned T.'s paternal grandmother who provided mother with T.'s whereabouts. It was not until January 2004 that mother first visited T. since her departure in September 2001.
[*2]
Mother is 26-years-old, unemployed, and resides with her 6-year-old twins, a boy and a girl, in a barely sufficient small trailer in the country in South Carolina. Her son has respiratory problems and her daughter has a shunt of some kind. Mother receives no child support for the children; her sole sources of income are food stamps and the $560 monthly in SSI payments which she receives for each child. She does not have a car.
Testing reveals that mother has verbal abilities which are below average, functional academic skills which are "severely deficient," reading abilities on the third grade level, and reading comprehension which may be "even less well developed." T., a special education student with a learning disability, does not do well in school; he is in the fifth grade but is reading at a second grade level.
M. W. is 40-years-old and disabled due to deteriorated discs in her back. She requires a walker or cane for assistance with walking. Ms. W. resides in a four-bedroom single family home with her 20-year-old daughter Geneva, Geneva's 4-year-old child Jaleek, and T. Ms. W. has only resided in this home for less than a year.
Prior to that time, and for the entire time T. has been in her care, Ms. W. has resided in temporary shelters and emergency housing provided to her by the Department of Social Services. In each of these placements, T. had to be bused long distances to his prior home school district of Coram.
Ms. W. has a limited income; she receives a total of $600 per month from Social Security disability and SSI, and she receives $100 per month in public assistance benefits for T. Ms. W. also receives monetary contribution from her daughter, who is employed.
T. has a close emotional bond with his (putative) father T.C., who lives close to Ms. W. and with whom T. visits each weekend and during holidays. Mr. C. provides Ms. W. with clothing and monetary support for the child.
T. also has a very close emotional bond with Ms. W., whom he calls "Mommy" (he also refers to his mother as "Mommy.") This child clearly knows that he is loved by Ms. W., who has provided all of his care for the past six years and who, as properly noted by the Law Guardian, has been the only consistent influence in this child's life.
It is heartbreaking to see how T. yearns for his mother. The court does not see this as any reflection of either mother's superiority as a care giver or of the extent of the emotional bond that exists between mother and child, for there has been little demonstration of that on mother's part. Rather, the court finds that T.'s desire to be reunited with his mother is a reflection of this child's anguished attempt to ease the pain of the maternal abandonment that has undoubtedly permeated his life.
The Law Guardian makes note of the numerous red flags contained within mother's [*3]forensic evaluation, such as her limited parenting ability, her academic deficiencies, and her various psychological issues. The Law Guardian recommends that custody be granted to Ms. W. and that T. be provided with as much contact as possible with his mother, including all major school holidays.
In this proceeding, the non-parent petitioner is seeking an award of custody against the natural mother. The parties do not have an equal right to the custody of T. Under normal circumstances, mother would have the superior right to custody, as she is the natural parent and has a constitutionally protected right to raise her own child. Similarly, T. has a right to be raised by his own parent. Before the court can interrupt a parent-child relationship by awarding custody to a non-parent, a threshold inquiry must first be made.
"Intervention by the State in the right and responsibility of a natural parent to custody of her or his child is warranted if there is first a judicial finding of surrender, abandonment, unfitness, persistent neglect, unfortunate or involuntary extended disruption of custody, or other equivalent but rare extraordinary circumstance which would drastically affect the welfare of the child. It is only on such a premise that the courts may then proceed to inquire into the best interest of the child and to order a custodial disposition on that ground." Bennett v. Jeffreys, 40 NY2d 543 (1976).
In the case at bar, mother has been only marginally and sporadically involved in T.'s life for the past six years. She has never demonstrated an ability or even an interest in parenting this child during that time.
Mother voluntarily surrendered the care and custody of T. to Ms. W. in September 1999. Mother's contact with T. has, at best, been sporadic and infrequent for the past six years. There was no contact at all for the two years following her unexplained move to South Carolina. Mother's non-presence in T.'s life has caused this child to become closely bonded to his other "Mommy," Ms. W., who has provided the only consistent parenting for T. for the past six years.
In view of the foregoing, the court concludes that extraordinary circumstances are present within the meaning of Bennett v. Jeffreys, supra, and that an inquiry into which custodial disposition would be in T.'s best interests is proper herein.
Having reached this threshold finding, as with any determination of custody, the sole concern of the court is which resolution will best serve the interests of the subject child by promoting the child's welfare, happiness, and optimum development. Eschbach v. Eschbach, 56 NY2d 167, 451 NYS2d 658 (1982); Friederwitzer v. Friederwitzer, 55 NY2d 89, 447 NYS2d 893 (1982); Nehra v. Ulhar, 43 NY2d 242, 401 NYS2d 168 (1977).
Among the factors to be considered in ascertaining the child's best interests are: (1) the continuity and stability of the existing custodial arrangement, including the relative fitness of the parties and the length of time the present custodial arrangement has continued; (2) quality of the [*4]child's home environment and that of the party seeking custody; (3) the ability of each party to provide for the child's emotional and intellectual development; (4) the financial status and ability of each party to provide for the child; (5) the individual needs and expressed desires of the child; and (6) the need of the child to live with siblings.
While Ms. W. had not been able to provide T. with stable housing for most of the time he has been in her care, the child has been in a stable and satisfactory home environment for almost a year. It is a home environment superior to that which can be provided by mother. Ms. W. has provided for all of T.'s needs for the past six years and is willing and able to continue to do so. Since the day she left T. in the care of Ms. W., mother has demonstrated neither an interest nor an ability to parent this child.
T. has a close emotional bond to both Ms. W. and his father. An award of custody to mother in South Carolina would severely impair T.'s ability to maintain a relationship with Ms. W. and his father. This would be two more significant losses in this child's life, which would be extremely detrimental to him. While T. has two siblings living with mother, there has been little opportunity for the child to develop a significant relationship with them.
For all the above reasons, the court concludes that it would be in T.'s best interests for custody to be awarded to Ms. W. It would also be in his best interests for T. to have significant, frequent, and meaningful contact with his mother. This child needs his mother in his life. Mother can have visitation whenever she is present in New York, and she is encouraged to make an effort to visit T. at least monthly. T. can also spend each summer and each school recess with his mother, effective immediately.
A separate order will enter.
Dated: June 27, 2005