OPINION OF THE COURT
Meyer, J.
Extraordinary circumstances are not a sine qua non of a change in parental custody of a child, whether the original award of custody is made after plenary trial or by adoption of the agreement of the parties, without contest, and without merging the agreement in the judgment. The more particularly is this so with respect to a judgment governed as is the judgment in this case by rule 699.9 of the Appellate Division, Second Department (22 NYCRR 699.9), pursuant to which the trial court expressly “retains jurisdiction *** for the purpose” to the extent permitted by law, “of making such further decree with respect to *** custody *** as it finds appropriate under the circumstances existing at the time application for that purpose is made to it” (22 NYCRR 699.9 [b], Approved Forms For Matrimonial Judgments, J13). The order of the Appellate Division affirming Special Term’s order changing custody to the father should, therefore, be affirmed, without costs.
The parties were married in 1968. An uncontested divorce was awarded plaintiff wife after inquest, by judgment dated July 24, 1979. The separation agreement en *92 tered into by them provided that as to the two children of the marriage, Lisa and Nicole, the husband and wife would have joint custody* with the children residing with the wife and reasonable visitation rights to the husband. It provided further that the terms of the agreement would survive a judgment of divorce “without merging, other than child support which shall merge in said decree.” The judgment of divorce provided that the parties have joint custody of the children, the father to have visitation as provided in the separation agreement, and that the agreement should survive and not merge in the judgment. It also contained the retention of jurisdiction provision (Approved Forms, J13) required by Appellate Division rule.
In September, 1979, the mother, who had been living with the children on Long Island close to the residence of the father, moved with the children to an apartment on East 93rd Street in Manhattan. Both parties and the children have been reared as Orthodox Jews, strictly observing both the Sabbath and the dietary laws. The children, who had attended a yeshiva on Long Island, were transferred to a yeshiva in Manhattan. Less than a year after the original judgment, in April, 1980, the father moved for modification of the judgment of divorce so as to award him sole custody of his daughters. The mother cross-moved for sole custody. After a trial during which the mother, father and both children testified, the Trial Judge found the father to be “a loving and caring person *** well qualified as a fit parent.” He found that the mother, while not unfit, was less fit to have custody than the father because her own best interests and social life, appeared to be of “paramount concern to her, to the total exclusion of the best interests of her children.” He predicated that conclusion on the mother having frequently left her then 11- and 8-year-old girls alone in the apartment until late at night when she went out for the evening even though the children informed her that they were afraid to stay alone, and on the mother’s profession of raising the children in the tenets of Orthodox Judaism while at the same time flagrantly violating those tenets by permitting a male *93 friend to stay in the apartment and share her bed to the knowledge of the children, by failing, except rarely, to take the children to Sabbath services, and by permitting the male friend to violate the Sabbath by turning on the television, all of which confused the children and was contrary to their religious beliefs and detrimental to their religious feeling. Noting the older daughter’s strong desire to live with her father and the younger child’s wish to continue living with her mother but not to be separated from her sister, the Trial Judge acknowledged that the wishes of the children was an element to be considered, but held it controlled in this instance by the overriding considerations above detailed. He therefore modified the judgment to award custody of both children to the father.
The Appellate Division by a divided court modified in a respect not material to our determination and affirmed Special Term’s order. The majority found the Trial Judge’s conclusion that custody in defendant would serve the best interests of the children to be supported by the evidence. The dissenter, interpreting our decisions in Corradino v Corradino (48 NY2d 894) and Matter of Nehra v Uhlar (43 NY2d 242) as holding that custody “pursuant to an agreement should not be transferred absent extraordinary circumstances” (81 AD2d, p 606) of which he found no evidence in the record, voted to reverse and deny the father’s motion. The mother’s appeal to us presents the question of law whether extraordinary circumstances are required as the dissent suggested. We affirm.
The only absolute in the law governing custody of children is that there are no absolutes. The Legislature has so declared in directing that custody be determined by the circumstances of the case and of the parties and the best interests of the child, but then adding “In all cases there shall be no prima facie right to the custody of the child in either parent” (Domestic Relations Law, § 240;. see, also, § 70). Because the section speaks to modification as well as to an original matrimonial judgment, “all cases” must be read as including both. That, of course, does not mean that custody may be changed without regard to the circumstances considered by the court when the earlier award was made but rather that no one factor, including the *94 existence of the earlier decree or agreement, is determinative of whether there should, in the exercise of sound judicial discretion, be a change in custody.
Indeed, in Matter of Nehra v Uhlar (43 NY2d 242, supra), we were at pains to point out many of the factors to be considered and the order of their priority. Thus, we noted that “Paramount in child custody cases, of course, is the ultimate best interest of the child” (p 248), that stability is important but the disruption of change is not necessarily determinative [pp 248, 250), that the desires of the child are to be considered, but can be manipulated and may not be in the child’s best interests (p 249), that self-help through abduction by the noncustodial parent must be deterred but even that “must, when necessary, be submerged to the paramount concern in all custody matters: the best interest of the child” (p 250), that the relative fitness of the respective parents as well as length of time the present custody had continued are also to be considered (pp 250-251), that “Priority, not as an absolute but as a weighty factor, should, in the absence of extraordinary circumstances, be accorded to the first custody awarded in litigation or by voluntary agreement” (p 251), whereas of lesser priority will be the abduction, elopement or other defiance of legal process as well as the preferences of the child (id.).
The priority which is accorded the first award of custody, whether contained in court order or voluntary agreement, results not from the policy considerations involved in res judicata (which permits change in custody decrees when warranted by the circumstances, Kunker v Kunker, 230 App Div 641, 645; cf. Matter of Bachman v Mejias, 1 NY2d 575, 581; Goldman v Goldman, 282 NY 296, 304; see Restatement, Judgments 2d [Tent Draft No. 3], § 74, Comment d; and [Tent Draft No. 5], § 61, Comment f, illustration 11), so much as from the conceptions that stability in a child’s life is in the child’s best interests and that the prior determination reflects a considered and experienced judgment concerning all of the factors involved (Martin v Martin, 74 AD2d 419, 427). But the weight to be given the prior award necessarily depends upon whether it results from the Trial Judge’s judgment after consideration of all *95 relevant evidence introduced during a plenary trial or, as here, finds its way into the judgment through agreement of the parties proven as part of a proceeding in which custody was not contested and no evidence contradictory of the agreement’s custody provision has been presented. No agreement of the parties can bind the court to a disposition other than that which a weighing of all of the factors involved shows to be in the child’s best interest (People ex rel. Wasserberger v Wasserberger, 42 AD2d 93, 95, affd on opn below 34 NY2d 660). Nor is an agreement so contradictory of considered judgment as to determine custody solely upon the basis of the wishes of the young children involved a “‘weighty factor’” for consideration (Martin v Martin, 74 AD2d 419, 426, supra). Thus, Nehra’s phrase “absence of extraordinary circumstances” is to be read as “absence of countervailing circumstances on consideration of the totality of circumstances,” not that some particular, sudden or unusual event has occurred since the prior award. The standard ultimately to be applied remains the best interests of the child when all of the applicable factors are considered, not whether there exists one or more circumstances that can be denominated extraordinary.
An additional reason for so holding in the instant case exists in rule 699.9 of the Appellate Division, Second Department, to which the decree in the instant case is subject. Custody decrees remain subject to modification because the governing statute so provides (Goldman v Goldman, 282 NY 296, 304, supra; Domestic Relations Law, §240; Siegel, 1964 Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law, §240, 1981-1982 Pocket Part, p 165; Ann., 73 ALR2d 1444). Rule 699.9 expressly states that “as to support, custody and visitation, no such [separation] agreement or stipulation is binding” (22 NYCRR 699.9 [f] [4]) and requires, as earlier noted, that the judgment contain the provision {id., Approved Forms, J13) that the court retains jurisdiction for the purpose of making such further custody decree “as it finds appropriate under the circumstances existing at the time application for that purpose is made to it” (italics supplied). Such a modification is, as already noted, permitted by law when authorized by the totality of *96 circumstances, including the existence of the prior decree. Moreover, the language of the rule makes indelibly clear that it is the circumstances existing at the time of the application for change that governs whether a change should be made, whether or not any of them can be characterized as extraordinary. This, of course, does not mean that a matrimonial court in the Second Department has the authority to change custody simply because change is requested, but that it has the discretion to do so when the totality of circumstances, including the existence of the prior award, warrants its doing so in the best interests of the child.
It thus appears that the standard applied by the courts below was not legally incorrect. Moreover, the record supports the determination of the courts below that the change of custody was warranted by the lesser concern of the mother for the emotional well-being of her children than for her own life style demonstrated after the original award was made, particularly in light of the short period of time it had been in existence when the application for modification was made and the fact that the custody provisions of the divorce judgment were based on the agreement of the parties rather than plenary consideration by the trial court.
For the foregoing reasons, the order of the Appellate Division should be affirmed, without costs.
Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler and Fuchsberg concur; Judge Jones taking no part.
Order affirmed.

 While physical custody was not to be shared under the agreement, it required consultation between the parties on all matters pertaining to the health, welfare, education and upbringing of the children.