Salzmann v Micieli-Williams (2004 NY Slip Op 51609(U))

[*1]

Salzmann v Micieli-Williams

2004 NY Slip Op 51609(U)

Decided on December 9, 2004

Family Court, Suffolk County

Spinner, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 9, 2004

Family Court, Suffolk County
Frank Salzmann, Petitioner
against
Anne-Marie Micieli-Williams, Respondent
V-1518/2001

Jeffrey Arlen Spinner, J.
The Petitioner Frank Salzmann filed a Verified Petition with this Court dated May 12, 2004 seeking an Order pursuant to Section 651 of the Family Court Act. Specifically, the Petitioner has requested that this Court enter an Order granting custody to him of the subject child Michael S. The Petitioner is the natural father and the Respondent is the natural mother of the subject child. The Respondent has opposed the application, instead requesting that the Court maintain the status quo ante in accordance with the Court's prior Order of November 27, 2001 under this docket.
 Following a series of adjournments and conferences, the Court, on October 19, 2004, in the presence of the Law Guardian, conducted an in camera interview of the child Michael S., see Matter Of Lincoln, 26 NY2d 270 (1969). Thereafter and in view of the inability of the parties to reach a resolution, the Court set the matter down for trial.
 On November 16, 2004, the Court held a fact-finding hearing. Both of the parties offered testimonial evidence and in addition, the Petitioner produced three witnesses in support of his application. The Court was afforded the opportunity to assess the demeanor, credibility and veracity of each of the witnesses who offered testimony in this proceeding.
 In his Petition, Mr. Salzmann asks the Court to award him custody of his son, asserting that for a variety of reasons, that Michael's best interests would be served by a change in custody. In sum, the Petitioner claims that the Respondent has relocated with the child seven times in the preceding three years, that the child wishes to live with his father, that the child's schooling is suffering because of inattention by the Respondent, that the child is frequently left unsupervised and that the Respondent affirmatively impedes and interferes unduly with the Petitioner's exercise of visitation.

 EVIDENCE ADDUCED AT THE HEARING
 The Petitioner called three witnesses on his behalf. These witnesses testified, in sum and substance, that they were fully acquainted with both parties and the child (one witness was the Petitioner's sister who lives in his home and another was the elder daughter of the parties and hence Michael's sister). Each of them testified that Michael and the Petitioner enjoy a close, loving and nurturing relationship, that the Petitioner engages in a variety of activities with Michael (including homework, weekend trips, movies, etc.) and that Michael has a wide circle of age-appropriate friends in the locale where his father has resided for the preceding nine years. The testimony of each of these witnesses was credible and uncontroverted and the Court is satisfied that each of these witnesses gave truthful statements.
 Mr. Salzmann stated, under oath, that he has owned and resided in his current home for some nine years and that Michael resided with him until the Respondent surreptitiously relocated to Florida with the child in 2001 without Petitioner's consent. He has been employed in the same industry for fifteen years and has worked for his current employer for two years. He established that the Respondent was engaged in a relationship with one Richie Williams (whom she later married) and that she moved to Florida with him. Between 2001 and early 2004, the Respondent, along
with Michael, relocated from Florida to Huntington Township, followed by a move to Parkland, Florida, thence to another home in Huntington, thereafter to a home in Northport, then to Petitioner's home for a short time (when she and the child had nowhere else to reside and were essentially homeless) and finally to the present home in Huntington. The Petitioner opined (and the Court heartily agrees) that this series of moves in the span of three years was not conducive to a stable home life for Michael. Moreover, most of the relocations were precipitated by arguments (and possible domestic violence) occurring between the Respondent and her spouse Richie Williams.
 The Petitioner stated that he enjoyed visitation with Michael every other weekend but that the Respondent would willfully interfere by refusing to allow him to pick up the child before a stated time, even if he was ready to leave. He stated that the Respondent has denied him holiday visitation as of late, claiming that the Court's Order of November 27, 2001 is, in her considered estimation, "...no good because it's old." He also stated that Michael is asthmatic and uses a nebulizer as well as receiving daily injections of a prescribed growth hormone. He indicated that the Respondent would decline to provide him with the necessary syringes and prescriptions for Michael and he detailed an incident wherein the Respondent caused him to twice travel to a distant pharmacy to obtain a prescription that was not extant. The Petitioner further stated that the Respondent has left Michael alone on a number of occasions in order to pursue volunteer work at the local firehouse.
 Most disturbing to the Court, however, was that in July of 2004, Child Protective Services conducted an investigation of the Respondent upon allegations that she had engaged in a violent altercation with Michael, striking him with such force that he was propelled into a wall, causing his head to leave a sizeable dent thereon. The Respondent apparently attempted to deflect CPS toward the Petitioner who was thereafter subject to investigation by that agency as well. He stated that he received a letter advising him that the case was "indicated" but that he was in no wise responsible and was not chargeable in the incident.
 Upon the close of the Petitioner's case, the Respondent testified on her own behalf but called no other witnesses. In short, the Court found the Respondent to be unworthy of belief. The Respondent gave answers to questions and when pressed for clarification, she altered and embellished her responses to suit the question. In addition, she was evasive in a number of her
answers and some responses were inconsistent with her prior sworn statements. The Court was afforded a substantial opportunity to observe and assess the Respondent's overall comportment. As to the issue of the altercation, she flatly denied that she had struck the child at all, instead stating that it was her hand that came into contact with the wall, thereby causing a dent. The [*2]Respondent attempted to cast aspersions upon the Petitioner by stating that he had no involvement with the child's ongoing medical care, his healthcare providers or his schooling. After careful observation of the parties and the apparent acrimony emanating from the Respondent, it is clear to the Court that this is not the case. In short, the Respondent impressed the Court as being controlling, disingenuous and not worthy of belief.
 The Court also conducted an in camera interview with Michael and the Law Guardian. The Court directed that the record of that interview be sealed but in view of Michael's age (fourteen years) the Court will accord some consideration to the statements made by the child in arriving at its determination herein.
 FINDINGS OF FACT AND CONCLUSIONS OF LAW
 It is the well settled law of New York that the primary consideration for the Court in any child custody matter is the best interests of the children. In order to determine best interests, the Court must consider a variety of factors including, but not limited to the stability and quality of the respective home environments as well as the relative ability and fitness of each of the prospective custodians to provide for and foster the intellectual and emotional development of the children, Eschbach v. Eschbach, 56 NY2d 167; Friederwitzer v. Friederwitzer, 55 NY2d 89; Nehra v. Uhlar, 43 NY2d 242. Although the "totality of circumstances" approach is frequently employed, no single factor is determinative and the unique facts of each matter dictate that some factors be accorded more weight than others. A reasonable interpretation of this approach would seem to indicate that factors and situations can change as the children grow and mature. As the Court of Appeals stated in Friederwitzer, supra, "The only absolute in the law governing custody of children is that there are no absolutes," 55 NY2d 89, at 93.
 The aforementioned authority contained within Friederwitzer and Nehler, supra also permits the Court to consider the desires of the child (understanding, however, that a child may be subject to influence from one or both parents) in weighing an application for a change of custody. Indeed, this Court did conduct an in camera with the child and his desires were made known to the Court.
 In reaching a final determination, this Court, in accordance with the provisions of CPLR [*3]Section 4511, hereby takes judicial notice of the prior proceedings conducted between these parties under this docket number, including the Order of the Family Court (Spinner, J.) entered on November 27, 2001.
 After careful consideration and evaluation of all of the evidence adduced, this Court finds that the best interests of the child Michael S. would be served by a transfer of custody to the Petitioner Frank Salzmann. The Court believes that such a change in custody will serve to foster stability in all areas of this child's life.
 It is therefore
 ORDERED that the application of Frank Salzmann shall be and the same is hereby granted in its entirety; and it is further
 ORDERED that custody of the child Michael shall be and is hereby awarded to and vested in Frank Salzmann; and it is further
 ORDERED that the Respondent Ann-Marie Micieli-Williams shall be entitled to visitation with the child Michael upon the following schedule, commencing December 10, 2004:
 -Every other weekend commencing Friday at 6:00 p.m.
 and ending Sunday at 6:00 p.m.;
 -Mother's Day from 10:00 a.m. to 6:00 p.m.;
 -Respondent's birthday from 10:00 a.m. to 6:00 p.m. (four
 hours if the same falls upon a day where school is in
 session the following day);
 -Six hours on the child's birthday (four hours if the same
 falls upon a day where school is in session the following
 day);
 -In odd numbered years Christmas Recess commencing at
 6:00 p.m. on the last day of school and ending at 6:00 p.m.
 on the last day of recess, Memorial Day, Labor Day,
 Thanksgiving Day;
 -In even numbered years Martin Luther King Jr. Day, Easter
 Recess commencing at 6:00 p.m. on the last day of school and
 ending at 6:00 p.m. on the last day of recess, Independence
[*4] Day, Columbus Day;
 -Four weeks during the summer, provided that the Respondent
 shall give Petitioner written notice of election of such
 weeks to be received not later than May 15 preceding
 the summer recess;
 -Pick up and drop off of the child shall be accomplished by
 the Respondent, who shall ensure that she shall be punctual
 in arrival, in order to avert any disappointment on the part
 of the child; and it is further
 ORDERED that both the Petitioner and the Respondent shall enjoy equal and unfettered access to the child's school, medical, dental and health records as well as the providers thereof; and it is further
 ORDERED that neither the Petitioner, the Respondent nor anyone on their behalf shall denigrate the other in the presence of the child and further that no persons other that Petitioner and Respondent shall be addressed as "Father," "Mother" or similar forms of address.
 This shall constitute the decision, judgment and order of the Court.
Dated: December 9, 2004
Central Islip, New York
 _____________________________________
 HON. JEFFREY ARLEN SPINNER
 Judge, County Court
 Acting Judge, Family Court
*The name of the minor child has been altered together with other identifying information in order to protect privacy.