Robert V.A. v Mary Ellen T. (2006 NY Slip Op 50893(U))

[*1]

Robert V.A. v Mary Ellen T.

2006 NY Slip Op 50893(U) [12 Misc 3d 1154(A)]

Decided on May 12, 2006

Family Court, Suffolk County

Lynaugh, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 12, 2006

Family Court, Suffolk County
Robert A., Sr., Petitioner,
against
Mary Ellen T., Respondent.
 V-05071-91/05E & F

HON. BARBARA LYNAUGH
COUNSEL FOR RESPONDENT
Mary-Elizabeth Abbate, Esq.
1600 Deer Park Avenue
Deer Park, New York 11729
COUNSEL FOR PETITIONER
Elsie Acevedo, Esq.
111 Montauk Highway
Center Moriches, New York 11934
LAW GUARDIAN
Ethan Halpern, Esq.
Suffolk County Law Guardian Bureau
889 East Main Street
Riverhead, New York 11901

Barbara Lynaugh, J.
By petition filed 11/28/05 and transferred to this court by order of the Family Court, Clinton County (Lawliss, J.), dated 12/5/05, petitioner-father seeks to modify an order of this court (Blass, J.), dated 12/11/03, so as to award him sole custody of the parties' 15-year-old son Robert V. A., Jr., born 7/23/90.

The 12/11/03 order is one which merely amended a prior visitation schedule. The controlling order of custody was issued by the Juvenile and Domestic Relations District Court of the City of Norfolk, Commonwealth of Virginia, on 10/2/97 and registered in this court on 6/30/98. The order, upon consent of the parties, grants joint custody of Robert with residential custody to [*2]mother. Father's petition is deemed amended so as to seek a modification of the registered Virginia order.
Respondent-mother has also filed a petition, dated 11/29/05, in which she alleges a violation of the visitation order of this court dated 12/11/03.
Having heard the evidence offered at the hearing, having conducted a lengthy in camera interview with the child, and having reviewed the recommendations of the Law Guardian, and with thorough and careful consideration, the court makes the following findings and conclusions.
Robert has been living with his mother on Long Island and visiting with his father in Plattsburgh during the summers and Thanksgiving recess. Living in mother's household are mother, her husband Mike, Robert, mother's daughter Cariann W., age 12, and, until recently, mother's son Jesse T., age 17. Neither Cariann nor Jesse are the children of petitioner-father herein. Jesse had been living with his father until the spring of 2005 when his father was sent to Iraq. At that time, Jesse went to live with mother.
About the same time, mother started dating Mike, who moved into mother's home after six weeks. Soon after Mike moved in, there began a high level of conflict between Mike and mother on one side and Jesse and Robert on the other side. Jesse testified on father's behalf; Mike was not called as a witness.
Mike frequently consumes a lot of alcohol, to the point of intoxication, and is often angry and difficult while he is drinking. There were frequent loud arguments in the household, with the boys objecting to Mike's behavior and mother siding with Mike against the boys. Mike threatened the boys and would call them demeaning and obscene names. The boys sought the intervention of a school guidance counselor, and were punished by mother for doing so.
As a result of this conflict, mother sent Jesse to live with petitioner, his step-father, during late October 2005; Jesse remains there to date. Since Jesse left the turmoil of mother's household and has been residing with father, his life has dramatically improved. He is focused in school, his grades have improved, he has a part-time job, and he has taken steps toward his career goal in the military. Jesse reports that he has "never felt better" and that he has friends and "a life." Father has a close, nurturing relationship with Jesse.
Robert's relationship with mother is now severely damaged and the child is suffering emotionally in her custody. Robert is extremely distraught over the [*3]breakdown in his relationship with his mother and strongly desires to live with his father. If he is not permitted to live with his father, Robert wants to be declared emancipated so he can leave mother's home.
Robert demonstrated just how adamant he is following his Thanksgiving visit with his father last year. Robert did not want to return to mother's home at the conclusion of the visit. Father insisted that Robert return, and put him on a Greyhound bus in Plattsburgh. Robert got off at the very next bus stop, called father and refused to go home. Father then brought the instant petition before the Clinton County Family Court and made an application for temporary custody. That application was denied, the proceedings were transferred here, and Robert returned to mother's home.
Robert now has little interaction with mother other than arguments. He stays late at his friend's home and heats up dinner when he gets home. While at home, Robert stays in his room to avoid confrontations with mother and Mike, with whom he has had numerous conflicts.
Mother has been steadily employed and has always provided a stable home for Robert. Father, who lives in a large trailer with his fiancé and their 2½-year-old child, has changed jobs frequently, has been evicted several times, has no drivers license, and owes significant child support arrears. Robert has a tumultuous, hurtful, and harmful relationship with mother's husband but shares a good relationship with father's fiancé.
At the conclusion of the hearing, the Law Guardian provided insightful recommendations to the court. He noted that father has attempted to change his life around by helping Jesse, which makes him a suitable custodian for Robert. In spite of father's deficiencies, the Law Guardian noted that father has a "far better" relationship with Robert. The Law Guardian feels that there is "a disconnect" somehow between Jesse and mother, "too much turmoil" in mother's household, and that mother's husband is a harmful and disruptive influence on Robert. He feels that mother may have "an inability to see what her children need from her." Based on the above, the Law Guardian recommends that custody of Robert be granted to father.
As with any determination of custody, the sole concern of the court is which resolution will best serve the interests of the subject child by promoting the child's welfare, happiness, and optimum development. Eschbach v. Eschbach,
56 NY2d 167, 451 NYS2d 658 (1982); Friederwitzer v Friederwitzer, 55 NY2d 89, 447 NYS2d 893 (1982); Nehra v. Ulhar, 43 NY2d 242, 401 NYS2d 168 (1977).
Among the factors to be considered in ascertaining the child's best interests are:
(1) the demonstrated parenting ability and relative fitness of the parties;
(2) the love, affection, and nurturing given by each party to the child, the emotional bond between the child and each party, and the willingness and ability of each party to put the child's needs ahead of his/her own;
(3) the length of time the child has lived in a stable and satisfactory environment, the desirability of maintaining the current custodial residence, and the stability of the proposed custodial residence;
(4) the ability of each party to provide for the child's emotional and intellectual development;
(5) the financial resources available to each party and the ability of each party to provide the child with food, clothing, housing, and medical care;

(6) the individual needs and expressed desires of the child and the degree to which the custodial determination would either continue or interrupt the various elements of the child's day-to-day life;
(7) the willingness and ability of each party to facilitate and encourage a close and optimum relationship between the child and the other party; and
(8) any other factor deemed relevant to a particular custody dispute; e.g., domestic violence, substance abuse, and/or the child's relationship with each parent's new spouse or partner.
"In determining whether a custody agreement should be modified, the paramount issue before the court is whether, under the totality of the circumstances, a modification of custody is in the best interests of the children." Johnson v. Johnson, 309 AD2d 750, 765 NYS2d 271 (2d Dept., 2003).
"Moreover, where parents enter into an agreement concerning custody it will not be set aside unless there is a sufficient change of circumstances since the time of the stipulation and unless the modification of the custody [*4]agreement is in the best interests of the children.'" Smoczkiewicz v. Smoczkiewicz, 2 AD3d 705, 770 NYS2d 101 (2d Dept., 2003), citing Gaudette v. Gaudette, 262 AD2d 804, 691 NYS2d 681 (3d Dept., 1999).
In the case at bar, mother may be able to provide a stable home for Robert, but she has lost the ability to provide for this child emotionally, and Robert is suffering tremendously as a result. Putting her own needs ahead of those of her son, mother seems to have chosen her relationship with her new husband over her relationship with her child.
While father has many deficiencies, he has demonstrated more stability in his life recently and is able to provide an adequate home for Robert. Father has provided a proper home and necessary guidance for his step-son Jesse, and Jesse has flourished as a result. Father is Robert's psychological parent and shares a close, nurturing and loving relationship with his son. Robert shares an extremely close relationship with his brother Jesse. Robert will be 16-years-old shortly and has a strong desire to live with his father and his brother.
Father has established an adequate basis for the modification of the existing order. The complete breakdown in the relationship between mother and Robert, mother's seeming inability and/or unwillingness to either recognize or rectify this situation, Robert's deleterious relationship with mother's new husband, and the tremendous amount of emotional pain being suffered by the child in his mother's custody as a result of these factors comprise a sufficient change of circumstances to warrant modification and a finding that a modification of the order would now be in Robert's best interests.
In view of the foregoing, the court concludes that it would be in Robert's best interests for custody to be awarded to father. Mother can have visitation as she and Robert can agree. An order will issue.
Dated: May 12, 2006
 BARBARA LYNAUGH
 JUDGE OF THE FAMILY COURT