Ernst J. v Angela G.B. (2006 NY Slip Op 51966(U))

[*1]

Ernst J. v Angela G.B.

2006 NY Slip Op 51966(U) [13 Misc 3d 1224(A)]

Decided on October 16, 2006

Family Court, Suffolk County

Lynaugh, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 16, 2006

Family Court, Suffolk County
Ernst J., Petitioner,
against
Angela G.B., Respondent.
V-02864-97/05B

Counsel for Petitioner
Feldman, Kramer & Monaco, P.C.
by: Charles Rosen, Esq.
330 Motor Parkway
Hauppauge, New York 11788
Counsel for Respondent
Catherine C. DeSanto, Esq.
431 Griffing Avenue
Riverhead, New York 11901
Law Guardian
Karyn Bell, Esq.
P.O. Box 1535
Mattituck, New York 11952

Barbara Lynaugh, J.
Petitioner-father seeks custody of Paulson J., born 9/23/95, as against respondent-mother. Having heard the evidence offered at the hearing, having conducted an in camera interview with the child, and having reviewed the position of the Law Guardian, and with thorough and careful consideration, the court makes the following findings and conclusions.
The parties were never married, there is no prior custody order, and Paulson has resided with his mother since birth. Father has been married since 1969, and Paulson was born as a [*2]result of father's extramarital relationship with mother. Although father has visited with the child sporadically over the years and has paid child support since Paulson's birth, he has had little real interaction with the child prior to the past year. Father attributes this to mother's resistance, which is certainly a factor. Mother would not allow any visitation beyond a few hours during the day, and has never permitted overnight visitation prior to the interim orders entered herein. However, father took no action to secure meaningful visitation prior to the instant action.
Sometime in the late Spring of 2005, father discovered a note that Paulson had written to his older brother in which Paulson described being choked and hit by his mother. It was then that father decided to seek custody of Paulson. When this litigation began, Paulson was very reluctant to visit with his father and was completely resistant to spending any overnight periods in father's home. The child has since bonded with his father, enjoys the time they spend together, and calls his father asking to spend extra time with him.
Father resides in a four bedroom ranch with his wife Michelin, their child John, age 15, and Michelin's mother, age 83.Paulson has his own room at father's home. Father's four other children are grown and reside outside of the home. Father has resided in this residence for thirty-three years. Father has been employed as an electrical test inspector for Mysonics in Farmingdale for the past two years; he earns $40,000 per year. Prior to Mysonics, father was employed by Symbol Technology for ten years. Father's wife is employed by Estee Lauder.
While mother has been Paulson's primary caretaker since birth, she has not provided him with a stable and secure lifestyle. She has moved numerous times over the past nine years, sometimes staying in a residence for as little as a few months. Mother lost a prior home that she had owned to foreclosure when she was unable to work, but did not explain the circumstances of her inability to maintain employment at that time.
Mother is currently unemployed because she has no car to drive since a motor vehicle accident four months ago. She apparently has no plans to replace the vehicle. Mother currently resides in a studio apartment. Paulson sleeps on a mattress on the floor with his mother in the corner of the apartment. Mother's current residence at the time of her testimony in June 2006 (at 124 Madison Avenue in Brentwood) is not the residence in which she was living at the time the court ordered home study was completed just three months earlier. The residence which was the subject of the home study was an unfurnished room in a home; mother and Paulson slept on blankets on the floor.
Due to mother's frequent changes in residence, Paulson has attended three different schools as of the fifth grade and has attended school in one school district while actually residing in another. Prior to the current school year, Paulson has had a deplorable school attendance record, with many absences and frequent days late. His homework was not being done properly, and he received failing grades in reading, language arts, social studies, and Spanish last year.
What is most alarming is that Paulson's problems in school persisted even after they had [*3]been discussed with mother. Mother presented no plan for any type of intervention in an effort to improve Paulson's academic performance.
In the current school year, mother had not registered Paulson for the Middle School in her area because she had not obtained the required letter from her landlord. Father attempted to register the child at this same Middle School but was unable to do so because he resides in a different part of the school district. Father then registered Paulson at the Middle School near his residence, and mother took no action to change this. Since the beginning of the school year, father has been picking up the child from mother's home and driving him to school; the child takes a bus to father's home after school. Since these arrangements have been in place, Paulson has been getting to school on time and does his homework each day when he arrives home from school.
Mother denied that the incident involving the choking and the hitting, which were the subject of Paulson's letter to his brother, had occurred. Mother does acknowledge that these allegations were substantiated by Child Protective Services (CPS). The probation home study report (Petitioner's Exhibit 3) idicates that this incident was the subject of closed indicated case in October 2005. CPS indicated the case for inadequate guardianship against mother for "choking, twisting and shaking" Paulson.
As with any determination of custody, the sole concern of the court is which resolution will best serve the interests of the subject child by promoting the child's welfare, happiness, and optimum development. Eschbach v. Eschbach, 
56 NY2d 167, 451 N.Y.S.2d 658 (1982); Friederwitzer v Friederwitzer, 
55 NY2d 89, 447 N.Y.S.2d 893 (1982); Nehra v. Ulhar, 43 NY2d 242,
401 N.Y.S.2d 168 (1977). Among the factors to be considered in ascertaining the child's best interests are:
(1) the demonstrated parenting ability and relative fitness of the parties;
(2) the love, affection, and nurturing given by each party to the child, the emotional bond between the child and each party, and the willingness and ability of each party to put the child's needs ahead of his/her own;
(3) the length of time the child has lived in a stable and satisfactory environment, the desirability of maintaining the current custodial residence, and the stability of the proposed custodial residence;
(4) the ability of each party to provide for the child's emotional and intellectual development;
(5) the financial resources available to each party and the ability of each party to provide the child with food, clothing, housing, and medical care;

[*4]
(6) the individual needs and expressed desires of the child and the degree to which the custodial determination would either continue or interrupt the various elements of the child's day-to-day life;
(7) the willingness and ability of each party to facilitate and encourage a close and optimum relationship between the child and the other party; and
(8) any other factor deemed relevant to a particular custody dispute; e.g., domestic violence and physical abuse.
In the case at bar, mother has been caring for Paulson since birth, but she has done a remarkably poor job at parenting this child. She has been unable to maintain steady employment and has not provided Paulson with a stable and satisfactory home.
Mother's frequent changes in residence have caused the child to attend three different schools by fifth grade. She is unable to get the child to school on time and he is frequently absent from school. Paulson's homework is not being done properly. The child's academic performance has suffered dramatically as a result. Mother has failed to address the child's academic deficiencies and doesn't seem to even recognize that there's any problem in this area. Mother has physically abused the child.
Although father was only minimally involved with Paulson during the earlier part of his life, he has been steadily nurturing and strengthening his relationship with his son for well over a year now. As a result, the child now has an emotional bond with his father and wants to spend even more time with him. Father is gainfully employed and can provide the child with a stable home. When mother failed to register the child for Middle School, father took over this responsibility. Since father has been in charge of the child's academic pursuits, Paulson's school attendance has improved, he arrives to school in a timely fashion, and he has been completing his homework each day. Father needs to arrange for after school supervision of the child.
In view of the foregoing, the court finds that it would be in Paulson's best interests for custody to be awarded to father. He is the more stable parent and the parent who is better able to meet the child's needs. Mother should have extensive visitation with the child, including three weekends per month and alternate holidays and school recesses. A separate order will enter.
Dated: October 16, 2006

Barbara Lynaugh
Judge of the Family Court