[840 NYS2d 352]

In the Matter of HUGH L., Appellant, v FHARA L., Respondent.

First Department, August 9, 2007

APPEARANCES OF COUNSEL

*Patricia W. Jellen*, Eastchester, for appellant.

*Mark C. Sternick*, Forest Hills, for respondent.

*Frederic P. Schneider*, New York City, *Law Guardian*.

**OPINION OF THE COURT**

Buckley, J.

Although the stability ensuing from a prior award of custody is a factor to be considered on a request to change custody, "[t]he standard ultimately to be applied remains the best interests of the child when all of the applicable factors are considered" (*Friederwitzer v Friederwitzer*, 55 NY2d 89, 95 [1982]). As recommended by the court-appointed forensic evaluator and the Law Guardian below, the totality of the circumstances in this matter demonstrate that the best interests of the child would be served by awarding permanent custody to the father, who in fact had temporary custody from September 2003 until June 2005, shortly after the order appealed.

The parties married in 1996, and their son was born in April 1998, shortly after which they separated. In an April 2000 order, incorporated into the February 2001 judgment of divorce, Supreme Court (Laura E. Drager, J.) granted the mother custody and decision-making authority for medical and dental care, although both parents were to have all information regarding the child's health. The father was given custodial visitation every week from Saturday 10:00 A.M. through Monday 6:00 P.M. and decision-making authority for education, extracurricular activities, and summer camp, although both parties were to have access to all school records and teachers. The court also set a vacation and holiday schedule.

Supreme Court noted the extreme acrimony between the parties, including the fact that the wife had deprived the husband of 45 visits. The court found both parents to be caring and responsible toward the child, and while the father was initially uncomfortable handling an infant, his childcare skills had improved. Nevertheless, both parents possessed troubling traits. The father was arrested in 1998 and an order of protection issued against him following an incident in which he claims he

placed a belt around the mother's neck and she cut her hand punching him in the teeth, but which she asserts entailed his tightening a belt around her neck and biting her hand.* There was no question that the father had a bad temper, although there had been no recurrence of domestic violence, and there was no evidence that he had ever been abusive towards the son.

The mother was overly possessive, tried to limit the father's access to the pediatrician, had no interest in including the father in any decision-making, and wanted to curtail his visits. In addition, she was "less than truthful," her cooperation with the court was "sporadic," she indicated her intent to disobey any court-expanded visitation, and she abused the judicial process by improperly obtaining orders of protection against the father and his sisters in an effort to control access to the child.

The court based its award of custody to the mother on its finding that she offered the most stable environment, in that she had a job and dedicated much time to the child, while the husband was unemployed at the time of trial and relied on the assistance of family members to look after the boy.

In February 2003 the father filed a petition to change custody to himself, and the mother filed a cross petition to, inter alia, give her sole decision-making authority and to reduce the father's weekly visitation to alternate weekends. She also filed a family offense petition, alleging threatening behavior and physical injury at the hands of the father and in the presence of the child. Based on those allegations, a temporary order of protection was issued, and the father's visitation was suspended for one weekend; after a hearing, visitation was reinstated and the pickup and drop-off point was changed from the mother's lobby to a specified police precinct. The mother then filed a petition claiming that the father had violated the visitation order by not returning the child as required, and revised her application for a temporary order of protection by adding a claim that the father had also injured the child. During a hearing on September 9, 2003, Family Court learned that the father had indeed timely returned the child to the precinct, but the mother failed to appear, and therefore the father, after consulting his attorney, kept the child. The mother indicated she would not comply with the directive concerning the use of the precinct because she did not believe it was in the child's best interests. She had not

---

* The father eventually pleaded guilty to harassment in the second degree, and was sentenced to a conditional discharge, requiring him to complete a domestic violence education program.

brought the child to the precinct for the visit, and the police had to go to her home to escort the boy. The court issued a temporary order of custody to the father.

Subsequently, both the Law Guardian and the neutral forensic evaluator, Dr. Joe Scroppo, a psychologist, recommended that the father be given sole physical and legal custody, though with liberal visitation for the mother. Based on his discussions with the boy's teacher, Dr. Scroppo reported that the father attended every parent meeting, volunteered to accompany every school trip, and always sent him to school prepared, in contrast to the mother, who never attended any conferences, even when assured that the father would not be there, and allowed the boy to go to class with homework unfinished. Similarly, the pediatrician informed Dr. Scroppo that the mother refuses to accept the diagnosis of the son's asthma, declines treatments, and on at least one occasion failed to follow the dispensing instructions for antibiotic medicine; the father, however, has always followed up appropriately with medical care.

Dr. Scroppo found that the father has a deep familiarity with the child's schooling, medical history, recreational activities, and personality traits. He adequately clothes, feeds, and nurtures the child, and is interested in becoming a better parent. He admits that he has said negative things about the mother in the child's presence, and he acknowledges the love between the boy and his mother and the importance of that relationship.

Dr. Scroppo had the impression that the mother was "less concerned about fulfilling the parental duty of monitoring the child's schooling and of maintaining contact with teachers, and more concerned about how discharging the duty might negatively affect her standing in the ongoing custody/visitation conflict." The mother rejected the pediatrician's diagnosis of asthma, based on her own research over the Internet, and did not think the boy needs his prescription glasses. Overall, she appeared to be more concerned with how others might perceive her than to ascertain the child's health status. She was ill-informed as to the boy's academic performance, and she knew he was having problems with school bullies, but chose to do nothing "because it might make her look bad in others' eyes." She accused the father of hitting the child in front of her and leaving marks and bruises, although no one else, including the boy's doctors and teachers, ever detected any signs of abuse. Her unfounded accusations against the father of physical and sexual abuse were made without regard to the consequences to

the boy. She would not acknowledge anything positive about the father or the importance of the father-son relationship. She felt no responsibility for the parental conflict or any of the child's problems, which she believed are due entirely to the husband and the court's racism. Dr. Scroppo identified her as having a substance dependence disorder, but he was unable to make a determination as to her risk of physically abusing the child, due to her disingenuousness and lack of cooperation. The boy admitted to Dr. Scroppo that the mother had coached him to say that he preferred to stay with the mother.

Family Court determined that both parents love the child, who returns their affections. The court dismissed the family offense petition, as lacking any foundation, since the father had not injured or threatened to injure either the mother or the child.

Family Court found the father to be "dedicated to ensuring that his son is happy, healthy and properly educated." Specifically, he oversees the boy's schoolwork, tends to his needs, and recognizes that the child loves his mother and should have a relationship with her. He also scrupulously complies with all court orders. The court noted Dr. Scroppo's cautioning that the father's "traditional parenting attitudes, combined with his temper, put him at increased risk for disciplining [the child] in potentially physically abusive ways"; however, because no abuse has ever occurred, Dr. Scroppo did not believe abuse was likely to occur in the future. Family Court conceded that the risk "may be somewhat remote and speculative," and acknowledged that the father is aware of his problems, is willing to undergo therapy, and agrees that the child would benefit from counseling.

Family Court observed that the mother "is intent on gaining total control of the child and stripping the father of any decision making authority," and fails to recognize the importance of the father in the child's life. In particular, she does not give the father full medical and dental information, obstructs his efforts regarding the child's education, unjustifiably deprived him of visits, and even interfered with his ability to have telephone contact. She did not send the child to the summer camp the father had enrolled him in, despite a referee's directive that she do so. The mother testified at the hearing that the father owed $17,000 in child support, although Support Collection Unit records revealed that there were no arrears, and she indicated that she would not press for the money for fear that the father would

infect the child with HIV to avoid paying. The mother conceded that she had not paid any support to the father during his temporary custody, but still claimed that the father's primary motive for seeking custody is financial (to avoid paying her support). Family Court credited Dr. Scroppo's opinion of the mother as a "robot mom," whose "permissive parenting may lead to significant problems as the child grows older." She refused to acknowledge to the court any deficiencies in her own parenting, and did not see anything wrong with leaving the child for extended periods of time with her son from a previous marriage who does not speak or understand English. She believes that counseling would only serve to confuse the child, and attributes all his problems to the limited amount of time she is able to spend with him. Family Court stated that "[t]he mother's failure to even entertain the notion that the child may have other issues, independent of her, that require counseling indicates that she has little, if any, insight into the child's feelings and concerns over the continuing parental conflict." The court found that the mother was often untruthful, and that she demonstrated a pattern of disregarding court orders she disagrees with, on the ground that they are the product of racism against her. Family Court noted that "the passage of time has done little to change the mother's views and behavior patterns" since the original custody order.

Family Court restored primary custody to the mother, based on its determination that the father is socially isolated and has been without steady employment for significant periods of time, and that his anger and history of domestic violence place the child at risk, while the mother has steady employment and poses no physical risk.

The risk of physical harm is of grave concern in assessing custody. Although neither the forensic psychologist nor Family Court could guarantee the father would never lose control of his anger and injure the boy, both believed the possibility to be remote. Most importantly, the domestic violence against the mother took place nine years ago, there has not been a recurrence, and the father has never abused the boy. He acknowledges his failings, has attended anger management programs, and evinces a continued willingness to undergo therapy. Overlooked, or minimized, by Family Court is that the mother poses a risk of physical harm to the child by her failure to cooperate with medical professionals, her preference for her own diagnoses over those of the professionals,

and her lackadaisical approach to filling and dispensing prescriptions. Moreover, Dr. Scroppo was unable to rule out the possibility of the mother's abusing the child because of her lack of candor and cooperation.

In contrast to the father, who understands that the child will benefit from counseling and a relationship with both parents, the mother poses a risk to the child's mental well-being, in that she opposes counseling for the child as confusing and for herself as unnecessary, and tries to obstruct the father-son relationship.

The father's deep involvement with the child's education and extracurricular activities contrasts with the wife's apparent minimal concern for his academic career.

The record demonstrates that the father has made progress in becoming a better parent and in addressing his shortcomings, and that he has the capacity for further growth. The mother remains mired in her inability or unwillingness to even admit her deficiencies, let alone begin to address them, and persists in equivocating and ignoring court orders with which she disagrees.

In light of all the circumstances, the child's best interests would be served by an award of primary physical and decision-making custody to the father. Even if the standard for ordering a change in custody were that the mother be "less fit" to continue with primary custody, the father should be given custody. The passage of time has permitted the development of a fuller record than was available when the original custody award was made, when the child was only two years old. At the time of the original order, the mother had not ignored medical diagnoses and prescriptions, rejected therapy, or been given the opportunity to reveal her disinterest in the child's schooling.

Accordingly, the order of the Family Court, New York County (Arlene D. Goldberg, J.), entered on or about March 9, 2005, which, to the extent appealed from, denied petitioner father's request for a change of custody and restored physical custody to respondent mother, should be reversed, on the law and the facts, without costs, sole physical and decision-making custody awarded to petitioner father, and the matter remanded to Family Court to determine respondent mother's visitation schedule. The prior holiday schedule is to remain in place pending Family Court's visitation decision.

TOM, J.P., WILLIAMS, GONZALEZ and SWEENY, JJ., concur.

Order, Family Court, New York County, entered on or about March 9, 2005, reversed, on the law and the facts, without costs, sole physical and decision-making custody awarded to petitioner father, and the matter remanded to Family Court to determine respondent mother's visitation schedule. The prior holiday schedule is to remain in place pending Family Court's visitation decision.