Matter of D.A. (2007 NY Slip Op 27451)

Matter of D.A.

2007 NY Slip Op 27451 [18 Misc 3d 200]

October 12, 2007

Hanuszczak, J.

Family Court, Onondaga County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, January 9, 2008

[*1]
In the Matter of D.A.
Family Court, Onondaga County, October 12, 2007

APPEARANCES OF COUNSEL

Anthony Rivizzigno, County Attorney (Molly Stroman of counsel), for Onondaga County Department of Social Services, petitioner. William R. Bartholomae for D.L., petitioner. Michael P. Marmor for T.S., petitioner. Karen J. Docter for L.A., respondent. Lisa M. Fahey for C.T., respondent. Darlene O'Kane, Law Guardian.

{**18 Misc 3d at 201} OPINION OF THE COURT

Michael L. Hanuszczak, J.
On November 14, 2006, the Onondaga County Department of Social Services (the County) filed a petition seeking a modification of the dispositional order dated October 27, 2005 concerning the subject child D.A., date of birth 2005. The petition sought to have the child's placement with the Onondaga County Department of Social Services vacated and to have the child placed with her maternal aunt T.S. until the completion of the next permanency hearing, pursuant to section 1055 of the Family Court Act. On September 1, 2006, D.L., the foster parent for D., filed a petition for custody. T.S., D.'s aunt, filed a petition for custody on November 8, 2006.
The court consolidated the modification and custody proceedings for hearing purposes. Testimony was taken on April 27, 2007, July 30, 2007, September 17, 2007, and September 24, 2007. Appearing were the attorneys for the County, the parents, and the petitioners in the custody petitions together with their respective clients. Also appearing were the Law Guardian and the court appointed special advocate (CASA) representative.

Background

On August 18, 2005, two days after the birth of the subject child, the County filed a petition alleging that the respondent parents had neglected the child. The parents consented to the child's removal on August 18, 2005. The petition alleged that testing showed that the mother used cocaine during her pregnancy and that the child was cocaine positive at birth. The petition alleged that the father did not take appropriate steps to protect the unborn child. The petition alleged that the mother had made no progress with services in a child protective proceeding involving another child (A.A.), who was adjudicated as neglected{**18 Misc 3d at 202} and placed in the care of a relative. The petition alleged that the father was under a permanent order of protection [*2]prohibiting him from contact with A.A.
On September 30, 2005, the parents waived their right to a hearing, made admissions to the neglect petition, and consented to placement. Thereupon, the child was adjudicated as neglected and placed with the Onondaga County Department of Social Services for a period of 12 months, which was later extended. The parents were placed under orders of supervision and protection for a period of 12 months, and the orders were later extended. At the initial permanency planning hearing, the County's goal of reunification with the parents was approved.
On March 16, 2006, September 14, 2006, February 28, 2007, and August 2, 2007, permanency planning hearings were conducted. At each hearing, the County's permanency goal of reunification with the parents was approved.
In related proceedings, R.M.V., an aunt who resides in New Jersey, filed a petition for custody of D. on January 25, 2006, and on April 5, 2007 withdrew her petition which was dismissed without prejudice. D.L., the foster parent, filed a petition seeking the termination of the respondents' parental rights, and this petition was dismissed with prejudice on July 18, 2007.

Summary of Testimony

The County called one witness, whom the court found to be very credible. Caseworker B.B. testified that she was assigned to the case in August 2006. She stated that D. reached her second birthday in August 2007 and that she is currently in foster care with foster mother D.L. She stated that D. has a brother who has been placed with a family member in New York State and six siblings who are in Florida. She stated that the permanency plan is to return the child to the parent and, as an alternative, to place D. with a relative.
The witness stated that she wants the foster care placement vacated and D. placed with T.S. who is an aunt and who will facilitate visitation with D.'s siblings and parents. She stated that Ms. S. is not a certified foster parent. The witness testified that Ms. S. has had weekend visitation with D. since October 2006 as a transition from the foster mother, with whom the child has a close relationship. She stated that she has observed Ms. S. and the child and that D. is very happy with her.
On cross-examination by the attorney for the foster mother, the caseworker admitted that T.S. does not yet have a car seat{**18 Misc 3d at 203} or a crib for D. She stated that Ms. S. has three children, two boys and one girl, at home and that D. would stay in Ms. S.'s room if the modification was granted. The caseworker stated that she and the prior caseworker planned to place D. with R.M.V., who is a relative living in New Jersey. She admitted that as of August 2006, R.M.V. had never seen D., stating that R. came to Syracuse and was not allowed to see D.
On continued cross-examination by the attorney for the foster mother, the caseworker stated that D.'s visits with her half brother have been supervised by Ms. C., who is the child's great-aunt and with whom he was placed by the County. She stated that the boy has been allegedly acting out sexually at school.
On continued cross-examination by the attorney for the foster mother, the witness admitted that Ms. L. and D. have a warm and loving relationship and that she has seen hugs and kisses exchanged between the two. She also stated that Ms. L. has adopted three other children. The caseworker stated that Ms. L. has been cooperative with the County and that she told Ms. L. that she was doing a good job with D.
On continued cross-examination by the attorney for the foster mother, the caseworker testified that D. has had little contact with her birth mother, either before or after the mother left [*3]New York State when D. was a year old.
On cross-examination by the attorney for T.S., the caseworker stated that Ms. L. was initially reluctant about the aunt's visits with D. The witness stated that the visits began when D. was 13 months old.
The attorney for the foster mother called M.A., who the court found to be credible and reliable but whose testimony is somewhat discounted because of her close relationship with the foster mother. Ms. A. testified that she is the foster mother's tenant. The witness stated that D. has been in Ms. L.'s custody since birth. She stated that she has observed Ms. L. caring for D. by feeding, dressing, changing, and giving her medications. She stated that she has seen D. playing with the other children in the L. home.
She testified that she provided child care on February 9, 2007 when T.S. tried to return the child to the L. residence after the child became ill on a visit. The witness stated that she took care of the child and called the caseworker. She also testified that on June 3, 2007, she, D., and Ms. L. waited in Ms. S.'s driveway for about one half hour for the visit with Ms. S. to begin.{**18 Misc 3d at 204}
On cross-examination, Ms. A. stated that she lives in a two-family home with Ms. L. and that Ms. L. lives in the upstairs apartment. She also testified that she is "good friends" with Ms. L.
D.L. was called by her attorney to testify. The court found Ms. L. to be credible and reliable but somewhat defensive as a witness. She stated that in November 2007 she will have been a foster parent for seven years and that she is the foster mother for D. She stated that she lives with D. and her three adopted children, ages 8, 6, and 5 years of age, in a second-floor apartment with three bedrooms. She testified that she has taken care of D. since August 19, 2005 when the child was brought to her from the hospital after her birth.
The witness provided information on various aspects of D.'s development over the past two years and her participation in family activities, such as church, visits to the zoo, picnics, travel, and parties. She stated that D. is doing well in her care and interacts well with her other children. A scrapbook containing pictures of D. was received into evidence. She also stated that D. was born cocaine positive and provided testimony concerning the challenges of caring for D. in the first weeks of her life.
Ms. L. testified that she has cooperated in effectuating the visits between D. and T.S. She stated that Ms. S. does not exercise her weekend visitation consistently and that she has spoken to the caseworker about this issue. She stated that from mid-February 2007 through April 2007 Ms. S. visited every other weekend although she was allowed visitation every weekend. The witness testified that Ms. S. did not visit D. from May 6, 2007 to June 20, 2007, although she did visit on June 21, 2007. The witness testified that Ms. S. did not visit with D. from June 22, 2007 to July 27, 2007. The witness stated that Ms. S. has visited D. twice between the dates of July 30, 2007 and September 17, 2007.
Ms. L. testified that on February 22, 2007 and in June 2007, Ms. S. was not available when she transported D. for the visitation. She stated that Ms. S. has returned D. early from visitation on approximately five occasions since November 2, 2006. The witness testified that she provided a car seat to Ms. S. and that Ms. S. has no crib for D. Ms. L. testified that she does not object to visitation between D. and her family members and denied interfering with family visits.
On cross-examination, Ms. L. stated that she receives SSD benefits for herself and her [*4]children due to an arm, neck, and{**18 Misc 3d at 205} shoulder injury. She stated that she also receives workers' compensation as well as a stipend of $16.10 per day from the County for D.'s care. She further testified that she resides with her children, D., two large dogs, and four cats. She admitted that her 8-year-old son M. has threatened to cut off the heads of his siblings; has hit, punched, and kicked children; and has burned a hole in his bed sheet. She stated that M. has microencephaly and that she applied to the County in January 2007 for a change in her subsidy to gain additional money to have M. tested. The foster mother denied that the County had told her that her pets were a danger to the children, but stated that she has arranged for a separate area of the house for them to sleep. She admitted in the past that she has objected to the removal of three or four other foster children placed in her care.
On redirect examination, Ms. L. denied that M. has done anything to D. or that he is a danger to D. She stated that the County placed other foster children in her care even after M. was placed with her and that the County's current petition to modify placement is not based on M.'s presence in her home. She further stated that none of D.'s relatives asked to have D. stay with them at Thanksgiving or Christmas in 2005 or 2006.
The foster mother's attorney also called K.D., who testified that she is a social worker at New Hope Family Services and has known Ms. L. for many years. The witness testified that she has observed Ms. L. exhibiting love and patience with all of her children over the years. The witness testified that she has observed appropriate care and responses between D. and Ms. L. On cross-examination, the witness admitted that her observations of Ms. L. and D. are limited to approximately three times per month at church and at the church nursery. The court finds Ms. D. to be credible and reliable but partially discounts her testimony due to her close relationship with Ms. L.
The attorney for the foster mother also called P.S., who testified that she is Ms. L.'s mother and that she resides in Vermont. The witness stated that she stayed at Ms. L.'s home for one week when D. was brought home from the hospital and that Ms. L. provided good care for D. She described various family interactions at holidays, parties, and vacations in 2005, 2006, and 2007, stating that D. calls her "Gammy" as do Ms. L.'s children. She stated that D. and her daughter have bonded as mother and child and that she thinks of D. as a grandchild. The court found Ms. P.S. to be very credible and reliable but discounts her testimony somewhat because of the familial relationship.{**18 Misc 3d at 206}
At the conclusion of testimony, the Law Guardian, the CASA representative, and the attorneys for the parents and Ms. S. voiced their support for the County's petition; the attorney for Ms. L. opposed the petition. The court also granted the attorneys a period of time to submit closing arguments in writing, if they so desired.

Closing Statements

In a written submission to the court, the attorney for the County stated that the Family Court Act establishes a preference that a child who is removed from the home should be placed with a suitable relative, if available, rather than an unrelated stranger in foster care. The attorney stated that the County has consistently sought relatives to care for D. The attorney stated that shortly after D.'s removal in August 2005 the County identified R.M.V., the child's paternal aunt and a resident of New Jersey, as a viable relative placement and in November 2005 a referral for an investigation in accordance with the Interstate Compact on the Placement of Children (ICPC) was initiated. The attorney stated that the ICPC report was never produced and [*5]that Ms. V. withdrew her petition for custody in April 2007.
The County Attorney stated that in November 2006 T.S., the child's maternal aunt who lives locally, was identified as a suitable relative placement. The attorney stated that Ms. S.'s custody petition was filed on November 8, 2006, and on November 13, 2006 the County filed the instant application to modify the dispositional order. The attorney stated that the testimony of the caseworker indicated that placing the child with Ms. S. would increase the contact between the child and her mother and siblings.
The attorney for the County summarized the testimony of the caseworker, stating that Ms. S. is employed as a nurse, has children of her own, and has a supportive family network. The attorney also stated that the caseworker testified regarding Ms. L.'s interference with visits between D. and Ms. S.
In a written submission to the court, the attorney for Ms. L. stated that it is uncontroverted that D. has been in the care of Ms. L. for the past 25 months, having been placed in foster care at the age of three days. He stated that it is also uncontroverted that Ms. S. did not express any interest in D. until the child was over one year old and that Ms. V., the County's original choice for a suitable relative placement, never even met D.{**18 Misc 3d at 207}
The attorney noted that the caseworker testified that D., who was born cocaine positive, is thriving under Ms. L.'s care and exhibiting positive development in all growth phases.
The attorney stated that while the testimony shows that D. has formed a close attachment with Ms. L. and her family, it also shows that Ms. S. has allowed contact to lapse between D. and herself for six to seven weeks at a time. He also stated that it was uncontroverted that Ms. S. has not purchased a car seat or crib for D. as she "did not want to waste the money in case she did not get the child."
The attorney also noted that Ms. L. would be granted a preference to adopt D. if she were freed for adoption due to the length of D.'s stay in foster care. He questioned why the County has not filed a petition seeking the termination of parental rights in this case since D. has been in foster care for more than 15 out of the past 22 months.
The attorney urged the court to consider D.'s best interests and deny the County's request to modify placement.

Standard of Law

In accordance with section 1061 of the Family Court Act, an application to modify an order of disposition in an article 10 proceeding may be granted for "good cause shown" after due notice and a hearing. (Matter of Angelina AA., 222 AD2d 967 [1995].) Pursuant to section 1065 of the Family Court Act, the court shall deny the application if it determines after a hearing that continued placement serves the purposes of this article. In addition, the court may, of its own accord, direct the agency to make such other arrangements for the child's care or welfare as the facts may require. An award of custody is determined after the court conducts an analysis of the best interests of the child. (Friederwitzer v Friederwitzer, 55 NY2d 89 [1982].) If the party seeking custody is not a parent, the court must first determine if the petitioner has standing to seek custody. (Matter of Bennett v Jeffreys, 40 NY2d 543 [1976].) It is well settled that a foster parent does not have standing to institute a petition for custody. (Matter of Michael W., 120 AD2d 87 [1986].)

Findings and Conclusions

After reviewing the testimony, its credibility findings, the proofs and case file and taking judicial notice of the permanency plan reports which have been filed with the court, the court [*6]finds that the County has not met its burden of showing good{**18 Misc 3d at 208} cause to modify D.'s current placement with D.L. (Matter of Sarah S., 9 Misc 3d 1109[A], 2005 NY Slip Op 51464[U] [2005].)
While it may have been the County's intention to place D. with a suitable relative, for a variety of reasons apparently beyond the control of the County this did not occur in a timely manner. It is the court's understanding that R.M.V.'s home was not found to be acceptable to the New Jersey authorities conducting the ICPC investigation. The County's subsequent choice of Ms. S. as a suitable relative for placement did not occur until after D. was over 15 months old. In the meantime, there is every indication that the child has formed a very strong bond with Ms. L. and her family and no evidence that the child has such a relationship with Ms. S. A change in physical custody would interrupt the stability of the existing placement arrangement and likely result in severe distress to this young child who has never known a mother other than Ms. L. (Gary D.B. v Elizabeth C.B., 281 AD2d 969 [2001].) The court finds that it is in D.'s best interests to continue to reside with D.L.
Although it was the County's intention to ease the transition from foster care to Ms. S., the evidence shows that there were many occasions on which Ms. S. did not avail herself of her weekly visits. The court notes that these lapses in visits were unexplained and unrebutted, either through the testimony of Ms. S. or any other witness. It is the court's finding that although Ms. S. has agreed to "step forward" to assume custody of D., she does not exhibit the same determination to parent D. that Ms. L. exhibits.
It is also noteworthy that in its permanency planning reports, the County never changed its permanency placement goal of reunification between D. and her parents to permanent placement with a relative.
Based upon these findings, the court denies the County's application to modify placement and continues D.'s placement with the Onondaga County Commissioner of Social Services in foster care with Ms. L.
In addition to reunifying a child with the family, the court must also consider the important goal of achieving permanency for a child who has been removed from the home in a neglect proceeding. (Sobie, 2006 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1055.) The court finds that the County's stated goal of achieving reunification between D. and her parents has not occurred and D. has spent all 26 months of her life in foster care. Accordingly, the{**18 Misc 3d at 209} court directs the County to file a petition seeking the termination of parental rights of the respondents.
The custody petition filed by Ms. S. is dismissed without prejudice as lacking in standing inasmuch as this decision continues the child's placement with the Commissioner of Social Services and directs the County to file for the termination of parental rights. The custody petition filed by Ms. L. is dismissed with prejudice as she lacks standing to pursue custody of the child since she is the foster mother. (Matter of Michael W., 120 AD2d at 92.)
The court directs the attorney for the County to prepare an order in accordance with this decision for the proceeding involving their request to modify the order of disposition. (Docket No. NN-5890-05/06A.) The order must comply with the federally approved forms for child protective orders. The court will prepare separate orders of dismissal for the custody petitions. (Docket Nos. V-06300-06, V-08190-06.)